1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOSEPH KENNEDY,** ) | **1:12-cv-1458 AWI MJS** |
| **Plaintiff**, ) | |
| ) | |
| **v.** ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER ON** |
| **KINGS MOSQUITO ABATEMENT** ) | **DEFENDANTS' MOTION FOR** |
| **DISTRICT; MICHAEL CAVANAGH,** ) | **JUDGMENT ON THE** |
| **an individual; STEVE GILLES, an** ) | **PLEADINGS** |
| **individual; DAVID HICKEY, an** ) | |
| **individual; and DOES 1 through 25,** ) | **Doc. # 9** |
| **Inclusive,** ) | |
| ) | |
| **Defendant**s. ) | |

This is an action for damages and injunctive relief arising out of the allegedly

wrongful termination of the employment of plaintiff Joseph Kennedy ("Plaintiff") by

defendant Kings Mosquito Abatement District ("Defendant District" or, collectively with

individual defendants Michael Cavanagh, Steve Gilles and David Hickey, "Defendants").

Plaintiff's complaint, which alleges a total of seventeen claims for relief, was originally filed

in the Superior Court of Kings County on July 31, 2012.  The case was removed to this court

on the basis of federal subject matter jurisdiction on September 5, 2012.  Of the seventeen

claims for relief alleged, three – Plaintiff's fourth, fifth and sixth claims for relief – allege

claims arising under federal law.  Plaintiff's fourth claim for relief alleges discrimination ,

retaliation and harassment in violation of Title VII of the Civil Rights Act of 1964.  The fifth

claim for relief alleges retaliation and harassment in violation of the Age Discrimination in Employment Act ("ADEA").  Plaintiff's sixth claim for relief alleges discrimination, retaliation and harassment in violation of the Americans with Disabilities Act ("ADA").

On November 6, 2012, Defendants filed a motion for judgment on the pleading pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (hereinafter, "Defendants' Motion").  Defendants' Motion seeks judgment as to sixteen of the seventeen claims for relief set forth in Plaintiff's complaint.  The only claim not included in Defendants' Motion is Plaintiff's sixth claim for relief for violation of the ADA.  Significantly, Defendants' ground their motion for judgment on Plaintiff's Title VII claim on the contention that "the filing of a [California Department of Fair Employment and Housing ("DEFH")] claim and the issuance of a subsequent right to sue notice does not satisfy the jurisdictional requirements for a claim under Title VII."  Doc. # 9-1 at 10:12-13.  Because Defendants' Motion challenges this court's jurisdiction over the federal claims, the court will address those claims first in the discussion that follows.  As will be discussed, *infra*, the court will also deem Defendants' Rule 12(c) motion to be pursuant to Rule 12(b)(6).

## FACTUAL BACKGROUND

At the time of acts complained of, Plaintiff was a 44-year old African-American male employed by Defendant District with good performance evaluations for approximately 18 years.  "Beginning in or about 2008, Plaintiff sustained a series of work related industrial injuries, occurring on July 7, 2008, November 7, 2008, September 25, 2009, September 25, 2009, and on or about May 26, 2011."  Doc. #1 at ¶ 14.  Plaintiff alleges he was required, as a result of the injuries to wear knee braces and ankle braces and was occasionally required to use additional aids such as ski poles to perform his work.  Doc. # 1 at ¶ 12.  Plaintiff alleges he also suffered "a work related stress disorder, manifesting various medical conditions, which was known by or should have been known by Defendants."  Id.

Plaintiff alleges he was the only African-American employed by Defendant and was

2

"regularly subjected to racial jokes, slurs and sayings by Defendants and other District Employees." Doc. # 1 at ¶ 15. "Additionally, on or about September 25, 2009, Plaintiff filed a complaint with the [DFEH] against the District for acts of racial discrimination, retaliation and disparate treatment discovered by Plaintiff." Doc. #1 at ¶ 14. It is not altogether clear whether the complaint filed on September 25, 2009, incorporated only claims of racial discrimination or whether ADA or ADEA claims were also incorporated. Plaintiff alleges that, beginning in mid-2008, he elected to pursue Worker's Compensation benefits and to protected his civil rights by filing "a grievance with Defendants and filing a DFEH complaint, among other claims, and continuing until his employment with the District was pretextually terminated." Doc. # 1 at ¶ 17.

Plaintiff summarizes the allegedly harassing and discriminatory acts by Defendants as follows:

> Defendants' acts of harassment, retaliation and discrimination include, but are not limited to: selectively being written up and reprimanded by management for alleged performance issues; receiving unreasonable negative employee evaluations; being suspended from employment, without pay, for following oral instructions of management; being required to prepare weekly schedules and daily checklists, while other similarly situated employees were not required to do so; being reprimanded for working overtime while others continued to be paid for overtime; being written up for storing District equipment in a locked vehicle, while other employees left equipment in unsecure locations but were not subjected to similar treatment; not being notified of cancelled and/or rescheduled employee meetings although others received notice; not being allowed reasonable use of the District's all terrain vehicle to treat sources that are difficult to access on foot and/or that have traditionally been treated ATV or by air; being assigned to a new zone continuing several large sources that were known by the District to be difficult to access, test and treat on foot, despite Plaintiff's physical disability and/or medical conditions and/or mental disability ; and, ultimately, being terminated and, thereafter, not timely paid by District final wages due and owing Plaintiff.

Doc. # 1, ¶17.

Plaintiff states, without further elaboration that he "has exhausted all administrative remedies to the extent required by law." Doc. #1 at ¶ 20. Plaintiff also alleges that "[p]rior to the filing of [this] action, Plaintiff submitted complaints to the California [DFEH] against Defendants. The DFEH issued Right to Sue Notices to Plaintiff, true and correct copies of

which are attached hereto and incorporated herein by the reference as <u>Exhibit "A"</u>.  Doc. # 1 at ¶ 21.  Exhibit "A" consists of three letters from DFEH, each dated September 28, 2011, and each titled "Notice of Case Closure."  The three letters are identical except as to the case number extension and the name of the defendant.  The first of the letters is regarding DFEH Case # E201112C5100-02 and names David Hickey as the defendant.  The letter with case extension number -01 names Mike Cavanaugh and the letter with case extension number -00 names "Kings Mosquito Abatement" as the defendant.  None of the letters indicate the substantive nature of the complaint.  Each of the Notice of Case Closure letters ends with the identical paragraph:

> If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Doc. # 1 at pp. 41 - 47.

## LEGAL STANDARDS

Under Rule 12(c) of the Federal Rules of Civil Procedure provides that: "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."  In reviewing a motion brought under Rule 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party."  <u>Fleming v. Pickard</u>, 581 F.3d 922, 925 (9th Cir. 2009).  Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b)(6) motion applies to a Rule 12(c) motion.  <u>Dworkin v. Hustler Magazine, Inc.</u>, 867 F.2d 1188, 1192 (9th Cir. 1989).  Judgment on the pleadings is appropriate when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.  <u>Ventress v. Japan Airlines</u>, 486 F.3d 1111, 1114 (9th Cir. 2007); <u>Honey v. Distelrath</u>, 195 F.3d 531, 532 (9th Cir. 1999).  The allegations of the nonmoving party must be accepted as true, while any allegations made by the moving party

4

that have been denied or contradicted are assumed to be false.  See MacDonald v. Grace Church Seattle, 457 F.3d 1079, 1081 (9th Cir. 2006); Hal Roach Studios v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).  The facts are viewed in the light most favorable to the non-moving party and all reasonable inferences are drawn in favor of that party.  See Living Designs, Inc. v. E.I. DuPont de Nemours & Co., 431 F.3d 353, 360 (9th Cir. 2005); Turner v. Cook, 362 F.3d 1219, 1225 (9th Cir. 2004).  "However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment."  Hal Roach Studios, 896 F.2d at 1550.

Although Rule 12(c) does not mention leave to amend, courts have the discretion to grant a Rule 12(c) motion with leave to amend, or to simply grant dismissal of the action instead of entry of judgment.  Courts also have discretion simply to order dismissal of the action instead of entry of judgment on the pleadings.  Amersbach v. City of Cleveland, 598 F.2d 1033, 1038 (6th Cir. 1979), *disapproved on another ground in* Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528 (1985); RUTTER PRACTICE GUIDE: FED.CIV.TRIALS & EV. CH. 4-G (2006);   see also Lonberg v. City of Riverside, 300 F.Supp.2d 942, 945 (C.D. Cal. 2004); Carmen v. San Fransisco Unified School Dist., 982 F.Supp. 1396, 1401 (N.D. Cal. 1997).  "A judge should not rebuff a litigant's effort to supplement the complaint or provide legal argument in support of the suit.  Because complaints need not articulate legal theories, and because the skeletal presentation in a notice pleading may be fleshed out later, a decision without giving plaintiff the opportunity to argue or augment his position is premature."  Johnson v. Revenue Management Corp., 169 F.3d 1057, 1060 (7th Cir. 1999) (internal cite omitted).   The court need not grant leave to amend when doing so would be futile and the deficiencies in the complaint could not be cured by amendment.  See Reddy v. Litton Indus., 912 F.2d 291, 296 (9th Cir. 1990); Gomez v. Winslow, 177 F.Supp.2d 977, 981 (C.D. Cal. 2001).

"Although the [Rule 12(c)] motion may be helpful in disposing of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further, thereby easing crowded trial dockets in the federal district courts, hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense."   5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, CIVIL 2D § 1368 (2007); see also Carrasco v. Fiore Enterprises, 985 F.Supp. 931, 934 (D.Ariz. 1997).   The court concludes that the instant action is not of the type usually resolved on an agreed set of facts as might make appropriate a motion pursuant to Rule 12(c).   As will be discussed in more detail below, both Defendants' motion and the court's review of plaintiff's complaint point to the conclusion that Plaintiff is not faced with the legal impossibility of achieving relief in this action; rather, his effort to state claims upon which relief can be granted is hampered by poor drafting.   The court will therefore exercise its discretion to deem Defendants' Motion for Judgment on the Pleadings (hereinafter, "Defendants' Motion") to be pursuant to Rule 12(b)(6).

In addition, the court notes that Defendants' Motion with regard to Plaintiffs fourth and fifth claims for relief is grounded at least in part on a challenge to the courts subject matter jurisdiction over these claims based on the alleged failure of Plaintiff to exhaust administrative remedies.   The court also notes that the single claim for relief not challenged by Defendants' Motion – the sixth claim for relief under the ADA – is subject to the same challenge as Defendants have leveled against the other two federal claims.   See Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990) (ADA "claimants generally establish federal court jurisdiction by first exhausting their EEOC administrative remedies"); 42 U.S.C. § 12117(a) (provision in ADA incorporating the enforcement procedures from Title VII, 42 U.S.C. § 200e-5).   Thus, Defendants Motion for judgment as to Plaintiff's Title VII claim automatically calls into question the existence of federal subject matter jurisdiction over Plaintiff's ADA claim as well since both statutes have the same exhaustion requirements and

1  the requirement for administrative exhaustion is jurisdictional for both claims.

2       Federal courts are obliged to raise *sua sponte* the issue of federal jurisdiction

3  whenever a doubt arises as to its existence.  Mt. Healthy City School Dist. v. Doyle, 429 U.S.

4  274, 278 (1977).  A challenge to the court's jurisdiction over the subject mater of the

5  complaint is proper pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Of

6  particular concern to the court, when subject matter jurisdiction is challenged under Federal

7  Rule of Procedure 12(b)(1), the *plaintiff* has the burden of proving jurisdiction. See Stock

8  West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir.1989).  "A plaintiff suing in

9  a federal court must show in his pleading, affirmatively and distinctly, the existence of

10  whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the

11  defect called to its attention or on discovering the same, must dismiss the case, unless the

12  defect be corrected by amendment." Smith v. McCullough, 270 U.S. 456, 459, 46 S.Ct. 338,

13  70 L.Ed. 682 (1926).

14                                      **DISCUSSION**

15  **I.  Federal Claims**

16       The issue of the court's jurisdiction over federal claims has been raised by

17  Defendants' Motion.  As a consequence, the court is obliged to first address its jurisdiction

18  over Plaintiff's federal claims and to determine whether the case may proceed in federal

19  court.  As this early stage of the proceeding, the court cannot assert pendent subject matter

20  jurisdiction over Plaintiff's state law claims if jurisdiction was factually lacking *ab initio* over

21  the federal claims.  As noted, Defendants' contention that Plaintiff failed to satisfy the

22  jurisdictional requirement for exhaustion of administrative remedies calls into question the

23  court's jurisdiction of Plaintiff's fourth and sixth claims for relief together.  The court's

24  jurisdiction over Plaintiff's ADEA claim will be discussed separately.

25       *A.  Title VII Claims and ADA Claims*

26       There tends to be some confusion as to the requirement for administrative exhaustion

27

28                                     7

under Title VII and, by extension under the ADA.  The requirement is best stated as two

propositions: first, an administrative complaint must be filed with the Equal Employment

Opportunity Commission ("EEOC"); and second the complaint with the EEOC must be filed

within 180 days of the occurrence of the acts giving rise to the complaint.  The first

proposition is jurisdictional, the second is not.  With regard to the first proposition:

> To establish federal subject matter jurisdiction [a plaintiff is] required to
> exhaust her EEOC administrative remedies before seeking federal
> adjudication of her claims.  *See Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th
> Cir. 1990).  As we explained in *Sosa*, "[t]he jurisdictional scope of a Title VII
> claimant's court action depends upon the scope of both the EEOC charge and
> the EEOC investigation." *Id.*  (citing *Green v. Los Angeles Superintendent of
> Sch.*, 883 F.2d 1472, 1476 (9th Cir. 1986).  The district court [has] subject
> matter jurisdiction over [a plaintiff's] allegations of discriminatory [dismissal]
> if that claim fell within the scope of an "'EEOC investigation which *can
> reasonably be expected* to grow out of the charge of discrimination.'" *Sosa*,
> 920 F.2d at 1456 (citations omitted).

EEOC v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994) ("Farmer Bros.") (italics in

original.  "'The administrative charge requirement serves the important purposes of giving

the charged party notice of the claim and "narrow[ing] the issues for prompt adjudication and

decision.'" [Citations]" B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1099 (9th Cir. 2002).

The decision in B.K.B. clarified the jurisdictional requirement discussed in Farmer Bros. by

holding that a plaintiff's ability to bring a suit in district court is not limited or prevented by a

failure of EEOC to address claims raised in an administrative complaint.  Id.  Rather, the

court's subject matter jurisdiction extends over all allegations of discrimination that either

"fell within the scope of EEOC's *actual* investigation" *or* within the scope of an EEOC

investigation that could reasonably have been expected to grow out of the charge of

discrimination.  Id. at 1100.

There has also been some confusion as to what constitutes the "filing" of an EEOC

complaint in the context of state-based relationships between state entities and the EEOC.  In

Surrell v. California Water Svc. Co., 518 F.3d 1097 (9th Cir. 2007), the plaintiff filed an

administrative complaint through DEFH and received a Right-to-Sue Letter which informed

the plaintiff that "'[i]f a federal notice of Right-to-Sue is wanted, the [EEOC] must be visited to file a complaint within 30 days of this [notice] or within 300 days of the alleged discriminatory act, whichever is earlier.'" Id. at 1104.  The plaintiff in Surrell never obtained a right-to-sue letter from EEOC.  Id.  The court held "that where, as here, a plaintiff is entitled to receive a right-to-sue letter from the EEOC, a plaintiff may proceed absent such a letter, provided she has received a right-to-sue letter from the appropriate state agency."  Id. at 1105.

Although the decision Surrell is somewhat confusing because it appears to conflate the issues of *timely* filing with the jurisdictional requirement of establishing the scope of the court's inquiry, the matter was revisited and clarified in Stiefel v. Bechtel Corp,, 624 F.3d 1240 (9th Cir. 2010).  Unlike the case in Surrell, the Stiefel court dealt with a situation where the plaintiff had filed a complaint with DEFH but filed a complaint with EEOC beyond the 300-day time limit.  The court in Stiefel also dealt with a claim under the ADA, instead of under Title VII.  In the Stiefel case, the plaintiff had received a right-to-sue letter from DFEH that concluded with a paragraph containing exactly the same wording as was contained in Plaintiff's Right-to-Sue Letters in this case.  The court in Stiefel noted that the administrative exhaustion requirements are the same for ADA and Title VII claims.  Stiefel, 624 F.3d at 1243-1244.  Reviewing and following their decision in Surrell, the Ninth Circuit explained that a plaintiff who files a charge with the DFEH fulfills the filing requirement for a Title VII action because they are *entitled* to an EEOC right-to-sue letter "because of the Worksharing Agreement between the state agency and the EEOC."  Stiefel, 624 F.3d at 1245.

In synthesizing the case authority pertaining exhaustion of administrative remedies in the context of Plaintiff's fourth and sixth claims for relief, the court must conclude that it lacks sufficient information to reach a conclusion.  While the fact that Plaintiff timely filed a DFEH complaint and received Right-to-Sue Letters appears to satisfy the requirement for filing of a complaint with EEOC, the mere allegation of the fact of having received right-to-

9

sue letters from DFEH and having "satisfied all applicable exhaustion requirements" does not adequately state facts to establish the scope of the court's jurisdiction.

> The inquiry into whether a claim has been sufficiently exhausted must focus on the factual allegations made in the charge itself, describing the discriminatory conduct about which a plaintiff is grieving. Only by engaging in such an inquiry will the actual focus of the administrative charge, and the scope of the claims exhausted, be revealed.

Freeman v. Oakland Unified School Dist., 291 F.3d 632, 637 (9th Cir. 2002).

The facts pled in Plaintiff's complaint establish that charges were filed with DFEH and that three Right to Sue Letters were returned to Plaintiff, one letter referring to each of the three Defendants. What is not clear is whether all three letters refer to charges presented to DFEH that are the same as, or similar to, the charges of discrimination that have been alleged in Plaintiff's complaint, or whether any of the letters referred to charges presented to DFEH that alleged discriminatory conduct based on both disability and race. In order to adequately allege claims for discrimination on the basis of both race and disability, Plaintiff must allege or append documents showing that *both* charges against each Defendant were presented to DFEH. Leave will be granted so that the necessary information can be pled.

### B. Claim for Age-Based Discrimination

As noted above, California is one of the states that has entered into a Workshare agreement with EEOC whereby a claim for age-based discrimination filed with DFEH under FEHA is deemed filed with EEOC as of the date the complaint is filed with DFEH. McConnell v. General Telephone Co. of California, 814 F.2d 1311, 1316 (9th Cir. 1987); 29 C.F.R. § 1626.10(c). Under this arrangement, California is termed a deferral state, meaning that EEOC defers preliminary investigation of a charge of age-based discrimination to the state agency – here DFEH. While there is no requirement in the ADEA for exhaustion of a either state or federal administrative remedies prior to the filing of a complaint in district court, 28 U.S.C. § 633 provides that "no suit may be brought under section 626 of this title [which provides for district court jurisdiction over age discrimination complaints] before the

expiration of sixty days after proceedings have been commenced under State law, unless such proceedings have been earlier terminated." The Ninth Circuit has held that the 60-day waiting period, whether imposed by subsection 626(d) or 633(b), is jurisdictional. Dempsy v. Pacific Bell Co., 789 F.2d 1451, 1453 (9th Cir. 1986). The Dempsy court referred to the waiting periods imposed by the two subsections as a "conciliation period" reasoned two important purposes were furthered by holding these conciliation periods jurisdictional. "First strict enforcement of the conciliation period allows the EEOC time to investigate and conciliate the alleged violation begins. [. . . .] Second, the conciliation period provides employers with notice of the action, thereby affording the employer a pre-litigation opportunity to settle the dispute." Id. at 1452 (internal citations omitted).

Here, as with Plaintiff's Title VII claims, the primary issue is not so much whether administrative claims were completely exhausted as what administrative claims did DFEH consider and against which Defendants? The question that Plaintiff must answer in order to overcome the jurisdictional challenge to his age discrimination claim under ADEA is whether and when Plaintiff placed a complaint that expressly alleged age-based discrimination before DEFH. Plaintiff's fourth, fifth and sixth claims for relief will be dismissed without prejudice so that Plaintiff may amend those claims to clarify the substantive violations alleged by Plaintiff in his DFEH claims in order to establish the scope of this court's jurisdiction.

**II. Non-Federal Claims**

There are two problems confronting the court with regard to Defendants' motion for judgment on the pleadings. The first is that, as noted, Plaintiff's complaint is too vague and inexact with regard to the charges that were brought before DEFH to allow the court to understand the scope of its jurisdiction as to the federal claims. The second problem is that judgment on the pleadings is not an appropriate procedural vehicle where, as here, a good deal of Defendants' Motion is based not on the contention of legal impossibility under an agreed set of facts, but frequently is based on the contention that Plaintiff failed to allege

facts that are sufficient to state a claim under an agreed legal theory.  Taking to heart the concern expressed in <u>Johnson</u> that a court should not proceed to judgment where a fleshing-out of facts may provide the opportunity to consider claims more fully on their merits, the court will exercise its discretion to dismiss Plaintiff's complaint, or portions thereof, rather than making a determination to grant or deny judgment.  <u>Johnson</u>, 169 F.3d at 1060.  Because the court has concluded that further clarification of facts set forth in Plaintiff's complaint is required before the court can be satisfied that is has subject matter jurisdiction, the court will give a somewhat less-than-exhaustive examination of each of the challenged non-federal claims for relief with the intention that the leave to amend, which will be provided for the purpose of clarifying the court's subject matter jurisdiction, may be used to clarify any of the non-federal claims as well.

### A.  FEHA Claims

Plaintiff alleges three claims under California's Fair Employment and Housing Act ("FEHA").  The first claim alleges retaliation against the District, the second alleges discrimination against the District, and the third alleges harassment against all Defendants. Defendants' Motion attacks Plaintiff's claim for retaliation by contending that Plaintiff's claim fails to establish any connection between the alleged adverse job action and the protected activity.  Defendants' Motion challenges the remainder of Plaintiff's FEHA claims by alleging the claims are nothing more than a regurgitation of the elements of the claims dressed up in the language of legal conclusions.  Plaintiff, on the other hand, appears to base his opposition primarily on the idea that notice pleading under Rule 8 of the Federal Rules of Civil Procedure does not require a detailed exposition of facts.  As will be explained below, there is a good deal of validity to Defendants' contention that the Complaint is poorly or inadequately pled; however, both Defendants' arguments and Plaintiff's response underscore the court's conclusion that a motion for judgment on the pleadings is inappropriate in this case.

Paragraph 17 of Plaintiff's complaint, as quoted above, alleges nearly the entirety of what Plaintiff contends constituted discriminatory conduct against him.  The only additional allegations are that Plaintiff was subject to more-or-less continuous racially offensive slurs or jokes and that he was ultimately terminated on or about July 12, 2011.  The court has reviewed Plaintiff's allegations regarding Defendant District's conduct and finds that at least some of the conduct alleged, including unwarranted negative job performance evaluations, selective reprimands for conduct commonly undertaken by others and selective disciplinary actions for conduct that was not similarly addressed in other employees may very well be sufficient for purposes of establishing "adverse employment action" as that term is used in the context of FEHA claims.  See generally, Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028, 1049-1054 (2055) (discussing the scope of conduct that may fall within the rubric of "adverse employment action").  What remains is to examine each of the legal theories advanced by Plaintiff – discrimination, retaliation and harassment – and determine if the wrongful conduct alleged by Plaintiff is sufficient to establish the elements of any or all of those claims for relief.

In this regard, it is necessary to keep in mind that the court is approaching the issues raised by Defendants' Motion in the context of whether dismissal is appropriate, not whether judgment on the pleadings is appropriate.  Because the court is essentially treating Defendants' Motion as a motion to dismiss, the court does not engage the familiar "burden shifting framework" of McDonnel Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973).  "At the motion to dismiss stage, [the plaintiff] need not support his allegations with evidence, but must allege sufficient facts to state the elements of a hostile work environment [or retaliation or discrimination] claim."  Johnson v. Riverside Healthcare System, LP, 534 F.3d 1116, 1122 (9th Cir. 2008).  The court's task, then, is to examine Plaintiff's discrimination, harassment and retaliation claims, in that order, to determine if facts have been alleged that are sufficient to state the elements of the three claims.

13

### *1. Discrimination/Disparate Treatment*

Fundamentally Plaintiff's discrimination claim under FEHA consists of the allegation that he suffered the conduct described in Paragraph 17 because he is (a) African-American, (b) physically and/or mentally disabled to an extent that could reasonably have been accommodated, or (c) older than 40 years of age.  Although the elements of a discrimination/disparate treatment claim may vary slightly depending on the specific legal theory of the claim, the general elements are: "(1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position he sought or was performing competently in the position he held; (3) the plaintiff suffered an adverse employment action such as termination or denial of an available job; and (4) some other circumstances [. . .] [that] suggest a discriminatory motive."  Gardner v. City of Berkeley, 838 F.Supp.2d 910, 922 (N.D. Cal. 2012) (citing Guz v. Bechtel Nat'l, Inc. 24 Cal.4th 317, 354 (2000)).

Plaintiff's Complaint lacks any facts to show that *racial* animus caused or was associated with any adverse employment action.  The Complaint alleges that Plaintiff suffered racially motivated comments and slurs by co-workers, but there is no allegation that the adverse employment actions summarized in Paragraph 17 were imposed by anyone who had personally used racial slurs or epithets or had in any other way communicated that racial bias was at the root of the adverse actions.  While racially offensive comments by co-workers may be the basis of a harassment claim under FEHA, such conduct is not attributable to the employer to satisfy the element of adverse job action because such comments "'lie outside the scope of job duties [and] which are not of a type necessary to business and personnel management.' [Citation]."  Lawler v. Montblanc North America, LLC, — F.3d —, 2013 WL 135752 (9th Cir. 2013) at *7 (quoting Reno v. Baird, 18 Cal.4th 640 (1998)).

As something of an aside, the court notes that while the events alleged in Paragraphs 17 and 18 of the Complaint are not dated, a casual reading of the complaint seems to suggest that these events occurred after the time Plaintiff was injured, not from the beginning of

14

Plaintiff's employment some eighteen years earlier.  Even when the court gives a broad and generous reading to the facts alleged in the Complaint, those facts tend strongly to undercut Plaintiff's claim of racial discrimination since they suggest that the management of Defendant District took no adverse action against Plaintiff until 2008 when he was injured. Because there is no alleged fact that would connect any adverse employment action to racially biased motivation on the part of any agent of Defendant District, Plaintiff's claim of discrimination/disparate treatment on the basis of race fails.

A claim for age discrimination on the basis of disability under FEHA requires the allegation of facts that show the general requirements 1-3 listed above.  In the case of a claim of age discrimination that fact that is usually required to show the connection between the adverse employment and the plaintiff's age is the fact that the plaintiff was replaced by a substantially younger person. Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 133, 142-143 (2000); Begnal v. Canfield & Associates, Inc., 78 Cal.App.4th 66, 73 (2000).  In the instant action, there is no indication in the Complaint that Plaintiff was replaced after termination with a substantially younger person, nor are there any other facts that would tend to point to age-based discrimination.  Plaintiff's claim for discrimination/disparate treatment is therefore inadequate to the extent it seeks to make a claim of discrimination based on Plaintiff's age.

The elements of a discrimination claim under FEHA on the basis of disability are the same as the elements for a claim of disability generally.  Lawler, 2013 WL 1335752 at *5. Unlike the situation with Plaintiff's discrimination claims under theories of age and race, Plaintiff's claim for discrimination on the basis of disability appears factually supported *if, and only if*, the court makes the assumption that, as the text of Plaintiff's complaint suggests, the adverse actions alleged in Paragraphs 17 and 18 of the Complaint occurred concurrently with or shortly following Plaintiff's injuries.  The court is not willing to make the required assumption because such fundamental elements as the dates of occurrences of allegedly

unlawful acts should not require presumption in a well drafted complaint.  However, the court recognizes that the defect can easily be cured in this instance and will provide leave to fill in the required dates.

### 2. Harassment/Hostile Work environment

Plaintiff's third claim for relief alleges harassment in violation of California Government Code § 12940(j) against all Defendants.  "To establish a claim for harassment [under FEHA], a plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment."  Lawler, 2013 WL 135752 at *7 (citing Aguliar v. Avis Rent A Car Sys. Inc., 21 Cal.4th 121 (1999)).  "The plaintiff must show a 'concerted pattern of harassment of a repeated, routine or generalized nature.' [Citation.] Unlike discrimination claims, harassment 'consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management.  Id. (quoting Reno v. Baird, 18 Cal.4th 540 (1998)).

The facts Plaintiff incorporates into his harassment claim are set forth at Paragraphs 39 and 40 of the complaint.  Paragraph 39 re-alleges work-related acts including "subjecting Plaintiff to different expectations and greater scrutiny than other District employees and selectively writing up or reprimanding Plaintiff, providing poor performance evaluations beginning in 2009 and continuing thereafter, and ultimately resulting in [Plaintiff's] pretextual termination."  Doc. # 1 at ¶ 39.  These alleged acts, while possibly unlawful in the context of a discrimination claim, do not fit into the category of harassment as that term has been interpreted because they constitute acts within the scope of employer-employee relations.  See Lawler, 2013 WL 135752 at *7 ("'commonly necessary personnel management actions such as hiring and firing, job or project assignments, . . . promotion or demotion, [and] performance evaluations . . . do not come within the meaning of harassment.").  The allegations set forth in Paragraph 39 are therefore not adequate to

16

establish that harassment occurred.

In addition, Plaintiff alleges in Paragraph 40 that "Defendants engaged in and knew or should have known of the racial slurs, and comments Plaintiff was subjected to by employees of the District throughout his employment by District." Doc. #1 at ¶ 40.  Plaintiff alleges in Paragraph 41 that "Defendants actions created a hostile, intimidating and offensive work environment, which adversely affected the terms and conditions of Plaintiff's employment." However, the Complaint does not make clear to what extent the "intimidating and offensive work environment" was the product of conduct that might qualify as harassing – racial remarks, slurs and the like – as opposed to conduct that was not harassment.  Further, Plaintiff does not explain how conduct that may actually be categorized as harassing – such as racial slurs and jokes – was so prevalent and offensive as to constitute a hostile work environment if Plaintiff had worked in that environment for the prior fifteen or more years without any evident complaint.  Plaintiff alleges District knew or should have known of the offensive behavior but does not allege that he ever made a request to the district to take action.

The court concludes Plaintiff has failed to allege facts sufficient to state a claim for harassment because he has failed to allege that conduct that specifically falls within the category of harassing behavior caused a work environment chat could be considered "hostile."  Plaintiff will have the opportunity to amend to address this deficiency.

### 3. Retaliation

"FEHA makes it unlawful for an employer 'to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint testified, or assisted in any proceeding under this part.' Cal. Gov't Code ¶ 12940(h)." Lawler, 2013 WL 135752 at *6. "[I]n order to demonstrate a prima facie case of retaliation under the FEHA a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee

to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." Yanowitz, 36 Cal.4th at 1042.

Plaintiff's complaint is not entirely clear with regard to the "protected activities" that are alleged to have brought about the retaliation against him. At Paragraph 14, Plaintiff alleges he "filed an internal grievance with the District alleging discrimination claims related to [Plaintiff's] pay, in or about September 2008. Additionally, on or about September 25, 2009, Plaintiff filed a complaint with the [DFEH] against the District for acts of racial discrimination, retaliation and disparate treatment discovered by Plaintiff." Two paragraphs later, at Paragraph 16, Plaintiff alleges:

> beginning in or after mid-2008 *after* plaintiff exercised his right to pursue worker's compensation benefits and protect his civil rights by opposing and/or making complaints regarding Defendants' unlawful and discriminatory employment practices, by filing a grievance with Defendants an and filing a DFEH complaint, among other claims, and continuing until his employment with the District was pretextually terminated, Plaintiff was subject to harassment, retaliation and further discrimination in the workplace . . . .

Doc. # 1 at ¶ 16 (italics added).

It appears from the foregoing that there is a discrepancy between what Plaintiff alleges in Paragraph 14 – that he did not file a DFEH complaint alleging discrimination until 2009 – and what Plaintiff alleges in Paragraph 16 – that he filed a complaint with DFEH *before* he experienced discriminatory conduct in mid-2008. The difference makes a difference in the court's analysis. An employee's formal or informal complaints to a supervisor regarding unlawful discrimination is a "protected activity" and adverse actions taken against the employee after such complaints may constitute retaliation. ( Passantino v. Johnson & Johnson Consumer Prod., Inc., 212 F.3d 493, 506 (9th Cir.2000). While the employee need not explicitly inform the employer he believes the conduct to be discriminatory, "complaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct." Yanowitz, 36 Cal.4th at p. 1047.

18

1    If there was no DFEH claim prior to mid-2008, then the only action that Plaintiff

2    could claim as protected was the filing of an *internal* grievance in 2008 over alleged

3    discrimination in Plaintiff's pay.  Whether the filing of that grievance was a protected activity

4    or not depends on what employer actions were grieved and whether Defendant District was

5    put on notice of allegations of wrongful conduct under FEHA.  On the other hand, if there

6    was a DFEH complaint that was filed prior to mid-2008, then an inquiry as to whether

7    Plaintiff engaged in a protected activity is unnecessary because the filing of a DFEH

8    complaint is an activity that is protected by statute.  In either case, it is important to the

9    court's analysis of a claim of retaliation to be able to accurately understand the temporal

10   relationship between the allegedly protected activity and the alleged adverse employment

11   action(s) undertaken by Defendant.  Plaintiff will be accorded the opportunity to amend his

12   retaliation claim to supply the necessary clarification.

13           ***4.  Failure to Accommodate Under FEHA***

14           Plaintiff's seventh claim for relief alleges Defendant District failed to engage in a

15   good faith interactive process in violation of Cal. Government Code § 12940(n).  The duties

16   of employers under Cal. Gov't Code §§ 12940(m) and 12940(n) are inextricably linked.

17   Gelfo v. Lockheed Martin Corp., 140 Cal.app.4th 34, 61 (2nd Dist. 2006).  "Subdivision (m)

18   of section 12940 requires that the employer make reasonable accommodations for the

19   employee.  Subdivision (n) requires an employer to 'engage in a timely, good faith,

20   interactive process with the employee or applicant to determine effective reasonable

21   accommodations, if any,' upon request of an employee with a known physical condition."

22   Jacques v. Allstate Ins. Co., 2007 WL 3046029 (E.D. Cal. 2007) at *2.

23           Subdivisions (m) and (n) of FEHA each describe employer obligations that are

24   separate and distinct from the prohibition against discriminatory treatment described in

25   Subdivision (a).  Id. at *2; Gelfo, 140 Cal.app.4th at 54.  Under Subdivision (m) the

26   "employer's failure to reasonably accommodate a disabled individual is a violation of

27

28                                              19

[FEHA] in and of itself."  Id. (citing Jensen v. Wells Fargo Bank, 85 Cal.App.4th 245, 257 (2000)).  Similarly, an "employer's failure to engage in a good faith interactive process regarding the requested accommodation" is actionable under Subdivision (n).  Id.  "'The interactive process is at the heart of the [FEHA's] process and [is] essential to accomplishing its goals.  It is the primary vehicle for identifying and achieving effective adjustments which allow disabled employees to continue working without placing an "undue burden" on employers.' [Citation.]" Gelfo, 140 Cal.App.4th at 61 (quoting Jensen, 85 Cal.App.4th at 261-262).

Although Defendants have not opposed Plaintiff's other FEHA claims on the grounds of failure to exhaust administrative remedies, the exhaustion requirement applies to claims for failure to accommodate or engage in the interactive process just as it applies to all other FEHA claims.  See Ramirez v. Silgan Containers, 2007 WL 1241829 (E.D. Cal. 2007) at *4 (citing Romano v. Rockwell Internat., 14 Cal.4th 479, 492 (1996) for proposition that exhaustion requirement applies to all claims under FEHA and applying exhaustion requirement to claim for failure to accommodate).  Defendants oppose Plaintiff's seventh claim for relief on the ground the DFEH complaint filed by Plaintiff  after his termination in 2011 did not include a claim for failure to accommodate and that the claim is therefore subject to dismissal as not exhausted.  Defendants refer the court to a copy of the 2011 DFEH complaint which they assert is appended to Plaintiff's complaint.  The court has examined the complaint and does not find a copy of any DFEH complaint appended there.

The court obviously lacks adequate information to make a determination without the submission of further evidence.  Plaintiff opposes Defendants' motion by simply asserting that the failure to accommodate and disability discrimination claims are "intertwined" and that separate exhaustion of the failure to accommodate claim is not necessary.  A civil complaint may contain FEHA claims that are not identical to the claims alleged in a DFEH complaint if the claims are like or reasonably related to those identified in the administrative

1    complaint or that would necessarily be uncovered in the course of a DFEH investigation.

2    Garcia v. Los Banos Unified Sch. Dist., 418 F.Supp.2d 1194, 1215 (E.D. Cal. 2006).  The

3    court, however, is not willing at this point to merely accept that the DFEH complaint alleged

4    violations of FEHA sufficiently related to Plaintiff's failure to accommodate claim without

5    any additional indication of what claims were before DFEH and when those claims were

6    filed.

7         *D.  Failure to Accommodate Under ADA*

8         Plaintiff's eighth claim for relief alleges failure to accommodate in violation of the

9    ADA.  Defendant challenges Plaintiff's claim on the ground Plaintiff failed to exhaust

10   administrative remedies.  The court finds Plaintiff's eighth claim for relief fails for the same

11   reason as the third; that is, Plaintiff has failed to demonstrate that the scope of claims alleged

12   in his FEHA complaint incorporate claims for failure to accommodate under ADA.  The

13   court notes again that Plaintiff's response – that he alleged that he had complied with all

14   requirements of administrative exhaustion of remedies – is a conclusory statement of law that

15   is not sufficient to carry the burden of affirmative demonstration of facts that establish the

16   court's jurisdiction over the claim.  Plaintiff will have the opportunity to amend his federal

17   claims to state facts to establish the court's jurisdiction according to the standard previously

18   discussed.

19        *E.  Failure to Prevent Discrimination or Retaliation (FEHA)*

20        Plaintiff's ninth claim for relief alleges failure to prevent Discrimination or

21   Retaliation in violation of FEHA against Defendant District.  The court notes that the claims

22   for discrimination and retaliation in violation of FEHA were alleged against Defendant

23   District as well.  Plaintiff's claim for failure to prevent the same harm that is alleged against

24   the same defendant is redundant and will therefore be stricken.

25        *F.  Retaliation in Violation of Labor Code § 1102.5*

26        Defendants challenge Plaintiff's tenth claim for relief for retaliation in violation of

27

28                                              21

Cal. Labor Code § 1102.5 on the ground Plaintiff failed to file a claim with the California Labor Commissioner.  As this court has recognized, exhaustion of administrative remedies is required before a claim pursuant to Labor Code § 1102.5 can be brought.  Campbell v. Regents of the University of California, 35 Cal.4th 311, 333-334 (2005); Neveu v. City of Fresno, 392 F.Supp.2d 1159, 1180 (E.D. Cal. 2005).  Administrative exhaustion "is a jurisdictional prerequisite to resort to the courts."  Johnson v. City of Loma Linda, 24 Cal.4th 61, 70 (2000).

As above, Plaintiff's conclusory assertion that he has satisfied all requirements of administrative exhaustion fails to meet the pleading standard necessary to establish the court's subject matter jurisdiction over the claim.  The claim will therefore be dismissed with leave to amend.

### G.  Bane Act (Cal. Civ. Code § 52.1)

As Plaintiff's complaint rightly asserts, California's "Bane Act, codified at California Civil Code § 52.1, protects all individuals from threats, intimidation, or coercion in connection with the exercise or enjoyment of any constitutional or statutory right."  Doc. # 1 at ¶ 105.  Plaintiff's eleventh claim for relief for violation of the Bane Act fails because Plaintiff's complaint fails to allege any conduct by Defendants that was threatening, intimidating or coercive and connected to any exercise of a right guaranteed to Plaintiff. Discriminatory conduct does not necessarily equal coercive, threatening or intimidating behavior.  The fact that the behavior alleged by Plaintiff appears to have begun *after* Plaintiff exercised his rights to file for disability and administrative complaints is a strong indication that the conduct was, if anything, retaliatory in nature and not aimed at coercing Plaintiff from the exercise of any right.  Factually, Plaintiff's eleventh claim for relief merely incorporates by reference the allegations of conduct set forth in Paragraphs 17 and 18.  The remainder of Plaintiff's eleventh claim for relief is an assemblage of conclusory remarks concerning "malicious fraudulent and/or oppressive" behavior without any explanation of

how the conduct complained of falls in that category.

Plaintiff's eleventh claim for relief will be dismissed with leave to amend.

### H.  Wrongful Termination in Violation of Public Policy

Plaintiff's twelfth claim for relief alleges wrongful termination in violation of public policy against Defendant District.  Wrongful Termination in violation of public policy (hereinafter, "wrongful termination") is a California State common law cause of action prohibits termination on grounds that violate "fundamental principles of public policy." Tameny v. Atlantic Richfield Co., 27 Cal.3d 167, 170 (1980).  In the context of this case, a wrongful termination cause of action can be maintained for violation of FEHA's prohibitions against discrimination based on disability, City of Moorpark v. Superior Court, 18 Cal.4th 1143, 1161 (1998), and for retaliation in violation of section 12940(h).  See Winston v. Countrywide Financial, 2013 WL 603567 (Cal.App. 2 Dist. 2013) at *5 (applying retaliation elements under FEHA from Yanowitz to common law wrongful termination in retaliation claim).

The applicability of common law remedies is limited, however, against "public entities."  Pursuant to California Government Code § 815(a), "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  However, Government Code § 815.2(a) provides that:

> A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

Id.  The upshot of the California's statutory scheme of public sector liability is that public entities are not liable except to the extent specifically provided by statute.  On the other hand, an entity may be liable under a theory of respondeat superior for the common law torts committed by an employee to the extent the employee is liable.  Martin v. County of San Diego, 650 F.Supp.2d 1094, 1109 (S.D. Cal. 2009).  "Thus, under California law, the [entity's] immunity from suit depends upon whether the individual [employees] are

23

immune." Id.

Defendants assert, and Plaintiff does not dispute that Defendant District is a public entity within the meaning of section 815(a). Since Plaintiff's twelfth claim for relief is alleged against Defendant District only, that claim must fail. Although Plaintiff's complaint does not allege the wrongful termination claim against the individual Defendants, Defendants assert in their Motion that a common law claim against Cavanaugh, Gilles or Hickey for wrongful termination is prevented by the California Supreme Court case of Miklosy v. Regents of the University of California, 44 Cal.4th 876 (2008). The Miklosy decision has two parts that are of interest in this action. First, the Miklosy court approved the holding in Palmer v. Regents of University of California, 107 Cal.App.4th 899 (2003) by holding that "section 815 [of the Government Code] bars Tameny[1] actions against public entities." 44 Cal.4th at 900.

The second part of the Miklosy decision that is of importance in the instant case is the discussion regarding the potential liability of the individual defendants in that case to the tort claim of wrongful discharge. In assessing the liability of the individual defendants in that case, the Miklosy court held that "a Tameny action for wrongful discharge can only be asserted against *an employer*." Id. (italics in original). In the context of a public entity, the

---

[1]    What constitutes a "Tameny" action is a bit of a mystery as far as the court can tell. The term derives form the California Supreme Court Case Tameny v. Atlantic Richfield Co., 27 Cal.36 167 (1980). In Tameny, the California Supreme Court held that the termination of an employee because that employee refused to engage in an activity that "violates a basic duty imposed by law upon all employers" may be redressed by the terminated employee in an action under tort theory as well as under contract theory. Id. at 179 and n.12. The decision in Tameny predates the enactment of the California Whistleblower Act, Cal. Gov. Code § 8547 et seq. but involved the refusal by an employee to engage in price-fixing conduct. Thus, the case itself appears to stand for the proposition that even where there is no statute that specifically announces a public policy exception to the general rule of at-will employment, a claim for the tort of discharge against public policy is supported where the employee is fired for refusing to take an action that is expressly forbidden by a law that is intended to protect the general public. In Miklosy, the California Supreme Court uses the term "Tameny action" in the context of a wrongful termination under the Whistleblower Act. See, e.g., 44 Cal.4th at 900. Other cases appear to use the term as a shorthand for any claim for wrongful termination in violation of public policy and Defendants' Motion appears to suggest that Plaintiff's twelfth claim for relief is a "Tameny" claim. Although there is no immediate issue before the court with regard to whether the application of the term "Tameny action" has any relevance to the holding in Miklosy, the court does not rule out that possibility at this time. The court therefore declines to apply  the label at this point to this action.

<u>Miklosy</u> court reasoned that an employer for purposes of wrongful discharge is the entity itself, not the supervisor who effectuates the discharge through the authority of the entity. <u>See</u> <u>id.</u> at 901 n.8.  Although the reasoning that reaches this conclusion appears at first glance to strain under the legal fiction of a separation between an entity and the acts of those who manage the entity's business, it is the state of California law, so far as this court has determined, that a common law tort cannot be maintained against a public entity and that a public entity is the only agency that can commit the common law tort of wrongful discharge. The upshot, of course, is that public entities *and* their supervising employees are immune from the common law tort of wrongful discharge.

The court will not labor further on the issue of whether <u>Miklosy</u> controls where the claim is not one that fits well within the label of "<u>Tameny</u>" claim.  Because Plaintiff alleged the commonly law tort of wrongful termination against an entity only, and because it *is* clear that a public entity may not be subject to liability under any common law tort theory, Plaintiff's twelfth claim for relief will be dismiss with leave to amend.

### I. Breach of Contractual Obligations - Thirteenth and Fourteenth Claims

Plaintiff's thirteenth claim for relief alleges breach of employment against Defendant District only.  It is apparently Plaintiff's contention that Defendant District breached its duty under Merit System Rules and Regulations to not terminate Plaintiff "on the basis of sex, age, marital status, whistle blowing, physical or mental disability, exercise of grievance procedures, and/or all other statuses protected by state and federal law."  Doc. #1 at ¶ 119. Plaintiff's contention is erroneous because the rights conferred by the Merit System do not arise as a matter of contract, but by statute.  <u>See</u> <u>Miller v. State of California</u>, 18 Cal.3d 808, 814 (1977) (no contractual right is vested in a public employee because he occupies a civil service position because the terms and conditions of such employment are fixed by statute and not by contract); <u>Hanford Exec. Mgmt. Emp. Ass'n v. City of Hanford</u>, 2011 WL 5825691 (E.D. Cal. 2011) at *8 (rights of employees governed by civil service system derive

1  from statute, not from contract).

2  Somewhat confusingly, Plaintiff also alleges in his complaint that notwithstanding

3  Defendant District's "promises to terminate the employment only for good cause, and/or the

4  Defendants' Merit System Rules and Regulations, which prohibited discrimination,

5  harassment and/or retaliation [. . .] Defendants arbitrarily terminated Plaintiff's employment

6  on the alleged and pretextual ground of poor performance." Doc. #1 at ¶ 121. The court is

7  not clear what Plaintiff is referring to when he references Defendant District's "promises to

8  terminate the employment only for good cause." Does Plaintiff allege there was some

9  contract separate and apart from Merit System Rules and Regulations that he entered into

10  with the District? So far as the status categories that Plaintiff cites are concerned – age, race

11  and disability – the right to not be subject to termination because of one's membership in any

12  or all of those categories arises from statute, not contract, whether the employee is covered by

13  the Merit System or not. This does not mean, of course, that an employer and employee are

14  prohibited from agreeing to institute those particular protections as a matter of separate

15  contractual agreement. It does mean, however, that if there does exist a separate contract,

16  separate and apart from Plaintiff's status under the Merit System, Plaintiff must make

17  specific reference to such agreement in order to make a claim against Defendants under the

18  theory of breach of contract.

19  Plaintiff's Fourteenth claim for relief for breach of implied covenant of good faith and

20  fair dealing fails on the same ground. A claim for breach of an implied covenant "depends

21  upon the existence of a valid contract." Stanley v. Univ. of Southern California, 176 F.3d

22  1069, 1078 (9th Cir. 1999). A claim for breach of the covenant of good faith and fair dealing

23  must fail where, as here, no valid contract is identified in the complaint.

24  ***J. Intentional Infliction of Emotional Distress***

25  The elements of intentional infliction of emotional distress are: "(1) outrageous

26  conduct by the defendant, (2) intention to cause or feckless disregard of the probability of

27

28

causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." Agarwal v. Johnson, 25 Cal.3d 932, 946 (1979).  The conduct in question must be "more than mere insult, indignities, threats, annoyances, petty oppressions, or other trivialities." Iverson v. Atlas Pacific Engineering, 143 Cal.App.3d 219, 231 (1 Dist. 1983) (internal quote and citation omitted).  "Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society." (Janken v. GM Hughes Electronics, 46 Cal.App.4th 55, 80 (1996).  Thus, personnel actions by an employer such as hiring and firing are insufficient to support a claim of intentional infliction of emotional distress even when those decisions are motivated by discriminatory conduct. Id.  In such cases, where the conduct is outside the scope of workers' compensation exclusivity, the proper remedy is a suit for discrimination. See id. ("A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination")

Based on the foregoing, the acts alleged against Defendant District, including retaliatory disciplinary action and termination do not constitute acts of such severity as to support a claim for intentional infliction of emotional distress.  Plaintiff also alleges he was "regularly subjected to racial jokes, slurs and sayings by Defendants and other District employees.  Although Defendants were aware of these acts, Defendants took no action to stop or prevent this unlawful conduct."  Doc. # 1 at ¶ 15.  Again, the court finds that racial jokes, slurs and sayings do not rise to the level of outrageous conduct required to support the claim for emotional harm.  While Plaintiff alleges Defendant District knew that such conduct was happening, there is no indication that Plaintiff complained to District or otherwise made it known that such conduct was causing emotional distress.  Plaintiff also insufficiently alleges the causal connection between Defendants' conduct and resulting emotional distress.  Finally,

it is not sufficient to simply allege that Plaintiff suffered emotional distress without any indication of symptoms or duration or severity.

Plaintiff's fifteenth claim for relief will be dismissed with leave to amend.

### K.  Negligent Supervision

Plaintiff's Sixteenth claim for relief alleges negligent supervision against Defendant District.  Plaintiff's negligent supervision claim fails for the simple reason it is duplicative.  So far as the court can tell from the complaint, the individual Defendants – Cavanagh, Gilles and Hickey – are/were the management and supervision of the King Mosquito Abatement District.  So far as the complaint is concerned, there is/are no other defendant or defendants that were trained, hired, or retained by them.  Logically, if the individual Defendants are to be held liable at all, it can only be on the basis of acts they personally committed; there cannot be a separate and additional basis of liability for failure of the tortfeasor to prevent his own acts without the imposition of duplicate liability.  Stated another way, the entirety of Plaintiff's action is against the individuals who had the authority to hire, fire, train, and supervise Plaintiff.  Thus, the entirety of Plaintiff's action consists of allegations of various aspects of wrongful supervision.  Plaintiff's claim for negligent supervision is nothing more than a repetition of the sum total of Plaintiff's allegations in the complaint generally.  Plaintiff's negligent supervision claim will be stricken as duplicative.

### L.  Violation of Equal Protection Clause of California Constitution, Article 1 § 7

Plaintiff's Seventeenth and final claim for relief alleges disparate treatment on the basis of race, age and disability in violation of the Equal Protection Clause of the California Constitution.  Defendants seek judgment on Plaintiff's equal protection claim on the ground California courts have consistently held that the Equal Protection Clause will not support damages relief.  See Doc. # 15 at 9:4-15 (citing, inter alia, Katzberg v. Reagents of the University of California, 29 Cal.4th 300 (2002) for the proposition that monetary damages are not available under the California Due Process Clause).  Plaintiff opposes Defendants'

motion by pointing out that Plaintiff's seventeenth claim for relief requests injunctive relief. Thus, Plaintiff implicitly acknowledges and does not dispute Defendants' contention regarding the non-availability of money damages.

The court will therefore dismiss Plaintiff's seventeenth claim for relief with prejudice only to the extent it seeks money damages.

## CONCLUSION AND ORDER

The court reiterates that its primary concern is its subject matter jurisdiction over Plaintiff's claims for relief under federal law.  Dismissal of those claims is warranted under Rule 12(b)(1) of the Federal Rules of Civil Procedure and Plaintiff is admonished that any amendment of those claims must meet the standard set forth in Rule 12(b)(1).  Except as noted below, the dismissal of the remainder of Plaintiff's claims is pursuant to Rule 12(b)(6) and is with leave to amend.

THEREFORE, in accordance with the foregoing discussion, it is hereby ORDERED that:

1. Defendants' Motion for judgment on the pleadings is DEEMED a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) as to Plaintiff's fourth, fifth sixth and eighth claims for relief and a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) as to Plaintiff's remaining claims.

2. Plaintiff's ninth and sixteenth claims for relief are STRICKEN as duplicative.

3. Plaintiff's seventeenth claim for relief is DISMISSED with prejudice only to the extent it seeks monetary damages.  Defendants' Motion is DENIED as to Plaintiff's seventeenth claim for relief to the extent it seeks injunctive relief.

4. All of Plaintiff's claims for relief *except* Plaintiff's ninth, sixteenth and seventeenth claims for relief are hereby DISMISSED without prejudice.

5. Any amended complaint shall be filed and served not later than thirty (30) days from

the date of service of this order. In the event no amended pleading is filed and served within that 30-day period, Defendants shall file and serve a notice of failure to amend and shall move to dismiss the action.

IT IS SO ORDERED.

Dated:     March 15, 2013     

SENIOR  DISTRICT  JUDGE